UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS McCRAY,

        Plaintiff,        Civil Action No. 14-12975
                                         Honorable Mark A. Goldsmith
v.                                         Magistrate Judge David R. Grand

AMINAH AL-SAEEDI and
WAYNE COUNTY JAIL-DICKERSON,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [18] AND DENY PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [22]**

Before the Court is a Motion to Dismiss and for Summary Judgment filed by Defendants Aminah Al-Saeedi ("Al-Saeedi") and Wayne County (collectively "Defendants") on March 20, 2015. (Doc. #18). On April 9, 2015, Plaintiff Douglas McCray ("McCray") filed a response to Defendants' motion, which purports to contain a cross-motion for summary judgment. (Doc. #22). On May 13, 2015, Defendants filed a response to McCray's cross-motion. (Doc. #24). An Order of Reference was entered on August 5, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #5).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1.(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at the time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss and for Summary Judgment [18] be **GRANTED**, and McCray's Cross-Motion for Summary Judgment [22] be **DENIED**.

**II. REPORT**

    **A. The Relevant Facts**

This is a *pro se* civil rights action brought under 42 U.S.C. §1983 by McCray, who currently is a prisoner of the Michigan Department of Corrections ("MDOC"). McCray's lawsuit arises out of his prior incarceration at the Wayne County Jail between December 2013 and February 2014. (Doc. #1). Broadly speaking, McCray alleges that Al-Saeedi and Wayne County were deliberately indifferent to his serious medical need in violation of the Eighth Amendment to the United States Constitution.[1] (*Id.*).

In his complaint, McCray asserts that, on January 19, 2014,[2] his left hand was injured during a fight with another inmate at the Wayne County Jail. (*Id.* at 5). McCray testified at his deposition that he was taken to the Jail's medical department immediately after the fight, but because he did not initially experience any pain in his hand, he was subsequently transported to segregation pending an investigation. (Doc. #18 at Ex. 1, pp. 15-16). After arriving in segregation, however, McCray "noticed the pain and throbbing" in his hand and was taken back to the medical department for examination. (*Id.* at Ex. 1, pp. 13-15).

When he returned to the medical department, McCray was examined and treated by Nurse Veena Pritt. (Doc. #1 at 13). McCray complained of pain in his left hand, but Nurse Pritt

---

[1] McCray also pleads a claim for medical malpractice against Al-Saeedi. (Doc. #1 at 8). In their dispositive motion, Defendants argue that this claim fails because McCray failed to provide a Notice of Intent to Sue letter, as required by M.C.L. 600.2912b. (Doc. #18 at 23-24). McCray offers no evidence or argument to the contrary. Thus, because McCray failed to comply with the statutory requisites before filing his lawsuit, his malpractice claim against Al-Saeedi should be dismissed. *See Moffat v. Dep't of Corr.*, 2014 WL 7215192, at *5 (Mich. App. Dec. 18, 2014) ("Failure to comply with statutory requirements of a medical malpractice claim renders the complaint insufficient to commence the action.").

[2] McCray actually alleges that the injury occurred January 18. (Doc. #1 at 5). However, the Wayne County medical records attached to McCray's complaint indicate that the injury occurred on January 19 (*id.* at 13), and McCray does not dispute the accuracy of these records.

2

found very little swelling and noted that he could move all of his fingers and wrist. (*Id.*). Based upon this initial assessment, Nurse Pritt provided McCray with an ice pack and Tylenol for the swelling and pain, and scheduled him to see a physician or nurse practitioner. (*Id.*).

On January 22, 2014, McCray returned to the Jail medical department, and was treated by Al-Saeedi, a nurse practitioner. (*Id.*; Doc. #18 at Ex. 3, ¶3). Ms. Al-Saeedi's notes reflect that McCray presented with complaints of pain, saying that his hand was tender when he applied pressure to it. (Doc. #1 at 13). On examination, Ms. Al-Saeedi noted that McCray had "left hand pain upon palpation," but he was "able to move all fingers and open and close [his] hand." (*Id.* at 14). She assessed him as having a left hand injury and prescribed ibuprofen for pain. (*Id.*). Al-Saeedi also gave McCray an icepack for swelling and ordered an x-ray of his left hand. (*Id.*). Al-Saeedi is not an x-ray technician and does not conduct the actual x-ray examinations of her patients. (Doc. #18 at Ex. 3, ¶10). This was Al-Saeedi's only encounter with McCray during his incarceration at the Wayne County Jail. (*Id.* at Ex. 3, ¶8).

On February 5, 2014, before McCray's x-ray could be completed, he was transferred from the Wayne County Jail into the custody of the MDOC. Al-Saeedi indicates that she does not know why McCray's hand was not x-rayed before he left the Jail; however, if an inmate leaves the Jail with an open order for treatment in the electronic medical records system, the system automatically (administratively) closes out the pending order. (*Id.* at Ex. 3, ¶11). Thus, McCray's medical records indicate that his order for a left hand x-ray was "Stopped by Admin, System on 02/05/2014 09:30; Comments: Inmate Released." (Doc. #1 at 13). An x-ray performed once McCray had been transferred to the custody of the MDOC revealed that McCray had suffered a fracture of his left hand. (*Id.* at 36).

3

B.     **Standard of Review**

When reviewing cross-motions for summary judgment,[3] the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita*

---

[3] Although Defendants' motion is styled as a motion to dismiss and for summary judgment, the Court notes that, at least with respect to their arguments regarding McCray's deliberate indifference claims, Defendants have relied on supporting documentation, including an affidavit, deposition testimony, and medical records. (Doc. #18). Thus, as to these claims, Defendants' motion is properly considered as one for summary judgment, rather than a motion to dismiss, which tests the sufficiency of the plaintiff's complaint. *See, e.g., Rhinehart v. Scutt*, 2014 WL 5361936, at *6 (E.D. Mich. June 20, 2014) (citing *Kostrzewa v. City of Troy*, 247 F.3d 643-44 (6th Cir. 2001)).

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### C.     Analysis

#### 1.     *McCray's Deliberate Indifference Claim against Al-Saeedi*

The Eighth Amendment prohibits the government from inflicting "cruel and unusual

punishments" upon incarcerated persons. *United States v. Campbell,* 245 F. App'x 505, 508 (6th Cir. 2007). This prohibition prevents prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "[D]eliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. §1983." *Id.* (citing *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985)). Deliberate indifference can arise as a result of delayed treatment, *Blackmore,* 390 F.3d at 899, inadequate treatment, *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment whatsoever, *Rouster v. Cty. of Saginaw,* 749 F.3d 437, 448-449 (6th Cir. 2014), for a prisoner's serious medical need.

The Sixth Circuit has succinctly explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to his serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Medical Servs., Inc.,* 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the

6

official actually drew the inference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994). As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id*. (internal citations omitted). Here, McCray's own allegations, as well as the record evidence, demonstrate that, under these standards, Al-Saeedi was not deliberately indifferent to a serious medical need.

In his complaint, McCray alleges that Al-Saeedi was deliberately indifferent in failing to x-ray his left hand before he was transferred out of the Wayne County Jail. (Doc. #1 at 6-8). For purposes of analyzing the pending motions, the Court will assume that McCray's fractured left hand constitutes an objectively serious medical need. *See Farmer*, 511 U.S. at 834 (medical need must pose a "substantial risk of serious harm"). Regardless, however, McCray has not established the subjective element of a deliberate indifference claim, *i.e.*, that Al-Saeedi "recklessly disregarded" a "substantial risk to an inmate's health" by "failing to take reasonable measures to abate it." *Broyles,* 478 F. App'x at 975 (internal citations omitted).

There is no dispute that Al-Saeedi treated McCray on only one occasion (January 22, 2014). (Doc. #18 at Ex. 3, ¶8). Prior to that, McCray had been examined by two nurses, who

7

noted full mobility of the hand and minor-to-little swelling. (Doc. #1 at 13-14). In her affidavit, Al-Saeedi indicated that, upon examination, McCray was alert, oriented to person, place time, and events, and in no acute distress; there was no redness or bruising; and he had pain in his left hand when touched, but he was able to move all of his fingers and open and close his hand. (Doc. #18 at Ex. 3, ¶7). Al-Saeedi further affirmed that all of McCray's symptoms and complaints were just as consistent with a sprained muscle or ligament as with a fractured or broken bone. (*Id.*). Therefore, Al-Saeedi diagnosed McCray with a hand injury not otherwise specified; prescribed ibuprofen for pain and swelling; provided McCray with an icepack to reduce swelling; and ordered an x-ray examination of his left hand. (*Id.*). Given these facts, McCray simply has not established that Al-Saeedi, who ordered – but was not responsible for performing – an x-ray, acted with reckless disregard of a substantial risk of serious harm.

Fundamentally, McCray appears to assert that Al-Saeedi was deliberately indifferent in failing to ensure that his hand was x-rayed immediately. (Doc. #1 at 5 ("Alsaeedi [sic] could've immediately that day, conducted An Emergency X-ray of the Hand due to swelling, but she was more concerned with being unprofessional.'")). The law in this circuit is clear, however, that McCray's disagreement with Al-Saeedi about the urgency of the x-ray does not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004) (mere differences of opinion between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not constitute deliberate indifference). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh,* 643 F.3d at 169 (internal quotations omitted). While the former cases may evidence the type of culpability required to state a deliberate indifference claim, the latter amount to assertions of medical

8

negligence and do not satisfy the requisite subjective component of such claims. *Id.* Indeed, courts have recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also Umbarger*, 93 F. App'x at 736. That is exactly the case here, where McCray received some medical treatment and simply disagrees with Al-Saeedi's decision to order an x-ray on something other than an immediate basis. *See Umbarger*, 93 F. App'x at 738.

For all of these reasons, McCray's deliberate indifference claim against Al-Saeedi is without merit.

    2.  *McCray's "Monell" Claim against Wayne County*

In his complaint, McCray also pleads an Eighth Amendment deliberate indifference claim against Wayne County. (Doc. #1 at 7 ("Under this Claim of Deliberate Indifference, the WCJ [Wayne County Jail] Administration is responsible also for violation of Plaintiff McCray's Rights under law for harm caused because the WCJ chose to ignore and deny the need for X-Rays ("Stopped").")). The law is clear, however, that a municipality may not be held vicariously liable for the actions of its employees under §1983. *See Connick v. Thompson*, ––– U.S. –––, 131 S.Ct. 1350, 1359 (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a municipality is liable only when its official policy or custom directly causes the plaintiff's injury. *Id.* Accordingly, "a plaintiff seeking to impose liability on a municipality under §1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).

9

In this case, McCray asserts that Wayne County "canceled" his x-ray because of a "commonly used clever tactic," namely that "it's widely understood that X-rays are Costly and Governments are fixed on Cutting Costs, especially Cutting Health Care Expenses." (Doc. #1 at 5-6). However, when asked at his deposition whether he has any evidence that Wayne County has a policy of canceling inmates' x-ray examinations as a cost-saving measure, McCray admitted that he does not. (Doc. #18 at Ex. 1, pp. 23, 33). McCray's vague and unsubstantiated assertions that alleged "cost-containment" concerns took precedence over his serious medical needs are insufficient to create a genuine issue of material fact as to whether Wayne County had a policy or custom that caused him to suffer an injury. *See Lowe v. Vadlamudi*, 2009 WL 736798, at *5 (E.D. Mich., Mar. 16, 2009) ("Cost control measures initiated by state and local governments by themselves are not unconstitutional. In fact, they are desirable. [The MDOC Director's] knowledge of a policy that encourages cost containment does not translate into deliberate indifference to the plaintiff's medical needs in this case, since there is no suggestion in the pleadings that [the Director] was aware of those needs and specifically disregarded them."); *Brightwell v. Lehman*, 2006 WL 931702, at *8 (W.D. Pa., Apr. 10, 2006) ("Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference…"). Moreover, Defendants attached to their motion Wayne County's official policy, which is to provide access to medical care to all inmates. (Doc. 19).

In sum, where there is no evidence of any custom or policy of Wayne County to refuse to provide x-rays, or to otherwise deny inmates' medical care, summary judgment is appropriate on McCray's *Monell* claim against Wayne County.

       *3.*    *McCray's Cross-Motion for Summary Judgment*

For all of the reasons stated above, summary judgment in McCray's favor should be denied. As set forth above, because McCray is the plaintiff in this case, to prevail on his summary judgment motion he must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [him]." *Calderone*, 799 F.2d at 259. Here, where the evidence clearly establishes that summary judgment in favor of Defendants is appropriate, it is equally clear that McCray's motion for summary judgment [22] should be denied.

### III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss and for Summary Judgment [**18**] be **GRANTED,** and McCray's Cross-Motion for Summary Judgment [**22**] be **DENIED**.


Dated: July 31, 2015                              s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                                      United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2015.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager